UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| LENELL JORDAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:20-cv-00021-JPH-MJD |
| | ) |
| BRANDON PHERSON, et al. | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND DIRECTING ENTRY OF FINAL JUDGMENT**

**I.     Introduction**

Lenell Jordan was an inmate at Putnamville Correctional Facility where he worked in the kitchen as a participant of the "IN2WORK" vocational training program. Mr. Jordan alleges that (1) the food services director removed him from the IN2WORK program in retaliation for filing a prison grievance; and (2) a prison official refused to help him because of his race. Each party has moved for summary judgment. Because no reasonable jury could find that the defendants retaliated against Mr. Jordan or discriminated against him, the defendants' motions for summary judgment are **GRANTED** and Mr. Jordan's motion for summary judgment is **DENIED**.

**II.     Summary Judgment Standards**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party has met its

1

burden, "the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial." *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015). A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941–42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page*, 906 F.3d 606, 609–10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court may rely only on admissible evidence. *Cairel v. Alderen*, 821 F.3d 823, 830 (7th Cir. 2016). Inadmissible evidence must be disregarded. *Id.*

The Court considers assertions in the parties' statements of facts that are properly supported by citation to admissible evidence. S.D. Ind. L.R. 56-1(e). If a non-movant fails to rebut assertions of fact in the motion for summary judgment, those facts are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts); *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (district court may apply local rules to deem facts unopposed on summary judgment). Additionally, the Court has no

duty to search or consider any part of the record not specifically cited in the statements of facts. S.D. Ind. L.R. 56-1(h).

### III. Material Facts Before the Court

#### A. Mr. Jordan

Mr. Jordan worked for Aramark Correctional Services in the kitchen at Putnamville Correctional Facility under the Federal Department of Labor's IN2WORK vocational training program. Dkt. 50-3 (Jordan IN2WORK agreement). An inmate who completes the IN2WORK program receives a vocational training certificate from the Department of Labor. *See* dkt. 42 at 7 (verified amended complaint). As part of the program, Mr. Jordan agreed to "practice proper hygiene for food service," including "[w]earing appropriate hair and beard restraints." Dkt. 50-3.

On December 6, 2018, Mr. Jordan was not wearing his beard guard properly. Dkt. 55-1 at 1, ¶ 4 (Pherson declaration). Mr. Jordan had been warned multiple times in the past for the same violation. *Id.* at 2, ¶ 4. Mr. Pherson, the prison food services director, told Mr. Jordan to leave the kitchen and wrote a Class C conduct report against him for the offense of "inadequate work performance." *Id.*; dkt. 50-4 at 4 (conduct report). After a disciplinary hearing with video evidence, the disciplinary board found Mr. Jordan guilty of the offense. Dkt. 50-4 at 1 (disciplinary hearing report).

Mr. Pherson allowed Mr. Jordan to return to work in the kitchen beginning around January 1, 2019, but Mr. Jordan was not reinstated into the IN2WORK program. Dkt. 50-1 at 2, ¶¶ 9–10 (Hartzell declaration); *see also*

3

dkt. 50-5 (classification appeal). Mr. Jordan wrote an informal grievance to Mr. Pherson on January 7, 2019, asking if he was still in IN2WORK. Dkt. 58-1 at 10 (Jordan informal grievance). Mr. Pherson responded, "No, you violated program rules and were kicked out." *Id.*

Mr. Jordan then filed a classification appeal seeking reinstatement into IN2WORK. Dkt. 50-5. Deputy Warden Hartzell responded, "You can return to work in the kitchen, however you violated a safety rule and will not be permitted to return to the program for 6 months." *Id.* Mr. Jordan also spoke to Deputy Warden Hartzell in person and received the same response. Dkt. 57 at 2−3, ¶ 8 (Jordan verified motion for summary judgment). Mr. Jordan accused Deputy Warden Hartzell of being racially biased because Deputy Warden Hartzell had helped a white offender get his job back but refused to help Mr. Jordan, who is African American, get his job back. *Id.*

### B. Mr. Binion

Bobby Binion, a white inmate, also worked in the kitchen at Putnamville as part of the IN2WORK program. Dkt. 50-1 at 3, ¶ 14. In October 2018, Mr. Binion received a Class B conduct report for the offense of "attempted unauthorized financial transaction." Dkt. 50-7 at 2 (conduct report). A Class B offense is more serious than a Class C offense. *See* dkt. 58-1 at 7 (excerpt from disciplinary code). Mr. Binion's offense was based on a phone call in which he encouraged his wife to send money at the behest of another inmate. Dkt. 50-7 at 2.

After Mr. Binion's disciplinary conviction, Mr. Binion wrote an informal grievance to Deputy Warden Hartzell complaining that Mr. Pherson was limiting or preventing him from participating in IN2WORK. *See* dkt. 58-1 at 5 (Binion informal grievance) ("Aramark's Brandon the Boss is tryin' to keep me from taking my servsafe test."). Mr. Binion was allowed to continue in the program because his disciplinary conviction was not for a Class A violation. *See* dkt. 58-1 at 11 (email from Sarah Capps) ("Effective immediately, unless offenders receive an A conduct report, they will be permitted to continue their DOL Program. Offender Binion #248228 has been re-instated as a DOL participant and may continue the program as normal.").

## IV.   Discussion

Mr. Jordan alleges that Mr. Pherson retaliated against him for filing a grievance and that Deputy Warden Hartzell discriminated against him based on race. The Court addresses each claim in turn.

### A.   Retaliation

To win on his First Amendment retaliation claim, Mr. Jordan must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity; and (3) the protected activity he engaged in was at least a motivating factor for the retaliatory action." *Archer v. Chisholm*, 870 F.3d 603, 618 (7th Cir. 2017).

Mr. Jordan has no trouble with the first prong; filing a nonfrivolous prison grievance is protected activity. *Perez v. Fenoglio*, 792 F.3d 768, 782–83 (7th Cir. 2015). And Mr. Pherson does not dispute the second prong. Viewing the

5

evidence in the light most favorable to Mr. Jordan, the Court assumes that Mr. Pherson was involved in the decision to remove Mr. Jordan from IN2WORK. Mr. Jordan cannot satisfy the third prong, however, because he has designated no evidence showing that Mr. Pherson removed him from IN2WORK in response to any grievance.

The undisputed evidence is that Mr. Pherson decided to remove Mr. Jordan from IN2WORK on January 1, 2019. *See* dkt. 50-5 at 1 ("I went back to work on 1-1-19. At this time I talked to Mr. Pherson. He said . . . he had [no] problem with [me] working in the [kitchen], but he would not allow me back into my IN2WORK program because of the conduct report over the beard guard."). That was nearly a week before Mr. Jordan had filed his first grievance on the matter. Dkt. 58-1 at 10 (informal grievance dated January 7, 2019). No reasonable jury could conclude that the January 7 grievance contributed to Mr. Pherson's decision on or before January 1 to remove Mr. Jordan from IN2WORK. Mr. Pherson is therefore entitled to summary judgment on this claim. And for the same reason, Mr. Jordan is not.

B.    **Equal Protection**

The Fourteenth Amendment's Equal Protection Clause protects inmates from racial discrimination by prison officials. *Lisle v. Welborn*, 933 F.3d 705, 719 (7th Cir. 2019); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). To win on his equal protection claim, a plaintiff must show that the defendant "intentionally treated him differently because of his race." *Lisle v. Welborn*, 933 F.3d 705, 719 (7th Cir. 2019). The plaintiff has the initial burden of showing, among other

6

things, that "similarly situated employees outside of his protected class were treated more favorably." *Reed*, 869 F.3d at 547. The ultimate question is whether the plaintiff has designated evidence from which a jury could conclude that his race was the real reason for the challenged action.

Here, Mr. Jordan must designate evidence showing that his race was the reason that Deputy Warden Hartzell did not help Mr. Jordan get back into the IN2WORK program. *See Lisle*, 933 F.3d at 719–20 ("[T]he standard is whether all the evidence 'would permit a reasonable factfinder to conclude that plaintiff's race . . . caused the [adverse action].'" (quoting *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016))). He attempts to meet his burden by pointing to evidence that Deputy Warden Hartzell treated two white inmates—Mr. Binion and an unnamed inmate—differently.

### 1. Mr. Binion

The Court assumes for summary judgment purposes that Deputy Warden Hartzell helped Mr. Binion stay in the IN2WORK program but did not help Mr. Jordan do so. The question is "whether this is evidence that similarly situated non-African-American [inmates] were treated more favorably." *Reed v. Freedom Mortg. Corp.*, 869 F.3d 543, 549 (7th Cir. 2017). "Two individuals are similarly situated, and thus require equal treatment under the Fourteenth Amendment, if they are 'directly comparable in all material respects.'" *Jones v. Noble*, 807 F. App'x 560, 562 (7th Cir. 2020) (quoting *Reed*, 869 F.3d at 549). This does not mean, however, that the proposed comparator must be "identical in every conceivable way." *Reed*, 869 F.3d at 549. "The objective is to eliminate

7

other possible explanatory variables . . . in order to isolate the critical independent variable of discriminatory animus." *Reed*, 869 F.3d at 549. Whether a comparator is similarly situated is typically a question for the fact-finder unless the plaintiff designates no evidence from which a reasonable fact-finder could conclude that the plaintiff has met his burden. *Id.*

Here, Mr. Jordan was fired for violating workplace health and safety rules for "not wearing a beard net while cooking the kosher food." Dkt. 50-4 at 4. Mr. Jordan's conduct violation was for the offense of "inadequate work performance," and that is why Deputy Warden Hartzell said he could not help Mr. Jordan get back into the IN2WORK program. Dkt. 50-5 ("[Y]ou violated a safety rule and will not be able to return to the [IN2WORK] program for 6 months.").

Mr. Binion, in contrast, was disciplined for conduct that was completely unrelated to his job—attempting to conduct an unauthorized financial transaction. Dkt. 50-7 at 1. While Mr. Jordan and Mr. Binion were both employed through the IN2WORK program, the facts and circumstances underlying their respective conduct violations were completely dissimilar. Mr. Jordan's conduct was directly related to his work and in violation of health and safety requirements, while Mr. Binion's conduct had nothing to do with his job.

Mr. Jordan points to the email from Sarah Capps stating that inmates will not be removed from their DOL program for a disciplinary violation unless it is a Class A violation. Dkt. 68 at 3 (citing dkt. 58-1 at 11). But again, Mr. Jordan was

8

not removed from the program merely because he engaged in a Class C disciplinary violation. He was removed from the program because he violated Aramark and the IN2WORK program's health and safety rules. *See* dkt. 55-1 at 1–2, ¶ 4. And nothing in Ms. Capps's email suggests that Aramark must allow inmates to continue in the IN2WORK program after violating its health and safety rules. *See* dkt. 58-1 at 11.

Because of these material differences, the fact that Deputy Warden Hartzell helped Mr. Binion get reinstated to the IN2WORK program but did not help Mr. Jordan get reinstated does not support an inference that Mr. Jordan's race was the real reason that Deputy Warden Hartzell treated Mr. Jordan differently. *Cf. Jones*, 807 F. App'x at 562 (finding summary judgment appropriate on equal protection claim because non-race-based differences explained differential treatment of two inmates found not guilty of conduct violation).

### 2.     Unidentified White Inmate

Mr. Jordan also points to statements from Mr. Binion that another white offender was able to stay in the IN2WORK program despite a work-related Class B offense. Dkt. 68 at 2 (plaintiff's statement of disputed factual issues); *see* dkt. 58-1 at 5 ("I know for a fact of one other person who had a job related B and still got to take his test."); *id.* at 9 (Binion letter) ("I know for a fact of another person with a job related B-write up for theft in the [kitchen] and was in the IN2WORK program that was able to stay in and complete the program, he hisself was also a white offender."). But these unsworn statements are inadmissible

9

evidence that cannot defeat a motion for summary judgment. *Cairel*, 821 F.3d at 830. And even if they were admissible, the statements do not suggest that Deputy Warden Hartzell had anything to do with the unnamed white inmate staying in the IN2WORK program.

In short, Mr. Jordan has designated no admissible evidence from which a reasonable jury could find that Deputy Warden Hartzell discriminated against him. Deputy Warden Hartzell is therefore entitled to summary judgment on the equal protection claim, and Mr. Jordan is not.

### V. Conclusion

The defendants' motions for summary judgment, dkt. [50] and dkt. [53], are **GRANTED**. The plaintiff's motion for summary judgment, dkt. [57], is **DENIED**. This Order resolves all claims pending in this action. Final judgment shall now enter.

**SO ORDERED.**

Date: 2/17/2022

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

LENELL JORDAN
105214
EDINBURGH - CF
EDINBURGH CORRECTIONAL FACILITY
Inmate Mail/Parcels
P.O. Box 470
Edinburgh, IN 46124

Christopher Douglas Cody
HUME SMITH GEDDES GREEN & SIMMONS
ccody@humesmith.com

Erica Lee Sawyer
INDIANA ATTORNEY GENERAL
Erica.Sawyer@atg.in.gov

Georgianna Q. Tutwiler
HUME SMITH GEDDES GREEN & SIMMONS
gquinn@humesmith.com